UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TESORO GOLD COMPANY, a Nevada Corporation,<br><br>        Plaintiff,<br><br>v.<br><br>HENRY R. JOHNSTON; DOUGLAS E. JOHNSTON,<br><br>        Defendants. | 3:05-CV-00051-LRH-RAM<br><br>ORDER |

Presently before the court is Plaintiff Tesoro Gold Company's Motion for Summary Judgment (#33[1]). Defendants Henry Johnston and Douglas Johnston (collectively "Defendants") have filed an opposition (#39) to which Tesoro replied (#40). In addition, Defendants have filed a sur-reply (#41). Also before the court is a second Motion for Summary Judgment (#48) filed by Defendants. Tesoro has filed an opposition (#53) to which Defendants replied (#54). Finally, Tesoro has filed a motion for partial summary judgment (#49). Defendants have filed an opposition (#52) to which Tesoro replied (#55).

**I.    Facts and Procedural History**

This is a diversity action with its genesis in Defendant Henry Johnston's employment with Combined Metals Reduction Company ("Combined Metals"). From 1996 to 1997, Combined

---

[1] Refers to the court's docket number.

Metals, a Utah corporation, employed Henry Johnston to assist the company in addressing some significant financial issues. Until January 21, 1999, Henry Johnston also served as an officer and director of the company, and he was a non-priority unsecured creditor of Combined Metals. Defendant Douglas Johnston is Henry Johnston's father and was a shareholder of Combined Metals. Both Defendants are Texas residents. Tesoro is a Nevada corporation created by Lawrence Atkinson, a former president and officer of Combined Metals. From the time of its formation in January of 1998, Tesoro has issued numerous loans to Combined Metals.

In or around 1978, Combined Metals acquired mining claims in Mineral County, Nevada. These claims became known as the Walker Lane Property. Combined Metals also purchased a 73 percent interest in the Mohave Mines Limited Partnership, which owns property in northwestern Arizona partially equipped to produce gold by open-pit and heap leach methods.

On February 13, 2000, Douglas Johnston filed suit in the Third Judicial District Court, Salt Lake County, State of Utah, alleging numerous misdeeds by Combined Metals' management and other third-party defendants, including Tesoro ("Utah case"). The primary basis for the complaint was that Combined Metals and Mr. Atkinson had breached their duties to Combined Metals' shareholders by transferring the Mohave Mine to Tesoro for the benefit of Mr. Atkinson and others. In addition, the complaint alleges Mr. Atkinson transferred a default judgment entered in favor of Combined Metals to Combined Metals' creditors without benefit to Combined Metals or its shareholders. Specifically, the complaint asserts claims for relief for breach of fiduciary duty, violation of Utah Code Ann. § 16-10a-840, misfeasance, misappropriation of corporate opportunities, negligent misrepresentation, and fraud.

On September 25, 2002, Combined Metals filed for Chapter 11 bankruptcy in the District of Nevada, BK-N-02-53359 ("bankruptcy proceeding"). Subsequently, as part of the bankruptcy proceeding, the Bankruptcy Court in the District of Nevada removed the Utah case to the District of Nevada, BK-N-03-5013.

On February 13, 2003, in connection with the bankruptcy proceeding, Tesoro and Combined Metals filed an adversary proceeding against Defendants, BK-N-03-5015. The adversary complaint alleges Douglas Johnston, with the help and encouragement of Henry Johnston, filed the Utah case for the purpose of disrupting Combined Metals and Tesoro's business relations. In particular, the complaint alleges Henry Johnston knew from his experience with Combined Metals that allegations of corporate misconduct and breach of fiduciary duty would be fatal to efforts to obtain financing for Combined Metal. As such, the complaint alleges Henry Johnston orchestrated the Utah case to engage in a "smear campaign" of Combined Metals and others. Further, the complaint alleges Henry Johnston used the Utah case to consume management's time and financial resources, thereby attempting to cause the failure of Combined Metal's Chapter 11 case.

Tesoro and Combined Metals' allegations also stem from the loss of the Mohave Mine. Tesoro claims Defendants, through their attorney, contacted the Bureau of Land Management ("BLM") to obtain a cessation order closing the Mohave Mine. On July 23, 2003, the BLM issued the cessation order, stopping all mining activity at the Mohave Mine pursuant to 43 C.F.R. Subpart 3715. In relevant part, under 43 C.F.R. § 3715.7-(1), the BLM may order a temporary or permanent cessation of all or any part of a use or occupancy if all or part of the occupancy is not "reasonably incident [to mining operations] but does not endanger health, safety or the environment, to the extent it is not reasonably incident." 43 C.F.R. § 3715.7-(1)(b)(1).

Combined Metals appealed the BLM's issuance of the cessation order. On September 7, 2006, the United States Department of Interior, Interior Board of Land Appeals denied Combined Metals' appeal, concluding that Combined Metals' use of the Mohave Mine was not reasonably incident to mining operations. In reaching this conclusion the court noted,

> [Combined Metals] was not engaged in prospecting, exploration, defining, developing, mining, or beneficiating valuable mineral deposits. Instead, the record shows that, for a period of some [three] years immediately prior to the issuance of the [cessation order], [Combined Metals] was merely 'mothballing' its equipment, while actually dismantling

3

much of its mining infrastructure, thus moving away from the activities comprising 'reasonably incident' occupancy under the regulations.

170 I.B.L.A. 56, 75 (2006).

As to the Walker Lane Property, on April 12, 2004, the Bankruptcy Court lifted a stay on the property, which allowed the property to foreclosure. Previously, on March 30, 2004, Henry Johnston had purchased the first secured creditor's claim on the property. On May 20, 2004, an asset sale was held, and Henry Johnston purchased the Walker Lane Property.

While the Utah case, the adversary proceeding, and the bankruptcy proceeding were all before the Bankruptcy Court in the District of Nevada, the cases had not been consolidated. On May 17, 2004, the Bankruptcy Court dismissed the bankruptcy proceeding. On August 6, 2004, Plaintiff filed with this court a "Motion to Withdraw Reference of the Utah Case and the Adversary Case," seeking to have the cases proceed in the United States District Court in the District of Nevada. On June 24, 2005, this court granted Plaintiff's motion, removing the Utah case and the adversary proceeding to the District Court (#3). As a part of the order, the court also ordered Combined Metals and Tesoro to brief the issue of whether the court could maintain subject matter jurisdiction over the two cases.

On August 4, 2005, due to the parties' failure to respond to the court's order, the court dismissed both cases without prejudice (#4). On November 3, 2005, Tesoro and Defendants entered into a stipulation and proposed order to reinstate the adversary case and to vacate the court's order of dismissal. In the stipulation, the parties agreed there is complete diversity and the amount in controversy exceeds $75,000. On November 8, 2005, the court signed the proposed order and vacated the August 4, 2005, order and judgment (#6).

On August 10, 2006, Defendants filed a motion for summary judgment (#12) seeking the dismissal of Combined Metals as a plaintiff and proposing to dismiss the Utah case without prejudice. On April 11, 2007, the court issued an order granting Defendants' motion (#22),

4

dismissing Combined Metals as a plaintiff and dismissing the Utah case. Accordingly, the only claims remaining before the court are those asserted by Tesoro against Defendants in the adversary complaint.

**II.     Standard of Review**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record that demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

## III. Discussion

The adversary complaint alleges the following claims for relief against Defendants: (1) wrongful interference with prospective economic advantage; (2) civil conspiracy; (3) intentional misrepresentation; (4) negligent misrepresentation; and (5) fraud. The court will address each of these claims in relation to Defendants' arguments below.

### A. Applicable Law[2]

As a preliminary matter, the court must address a choice of law issue concerning whether Nevada or Utah law applies to Tesoro's claims. "When a federal court sitting in diversity hears state law claims, the conflict laws of the forum state are used to determine which state's substantive law applies." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir. 1999) (citation omitted). Thus, the court looks to Nevada's conflict laws to determine which state's law to apply. For tort actions, Nevada has adopted the Restatement (Second) of Conflict of Law's most-significant relationship test to determine the choice of law, unless a more specific section of the Restatement applies to a particular tort. *Gen. Motors Corp. v. Eighth Judicial Dist. Court*, 134 P.3d 111, 116 (Nev. 2006).

#### 1. Wrongful Interference and Civil Conspiracy

As the Second Restatement does not provide a specific section applicable to wrongful interference or civil conspiracy claims, the court looks to § 145 to determine which state law governs these claims *See Gen. Motors Corp.*, 134 P.3d at 116. Under § 145, the rights and liabilities that arise from a tort are determined by the law of the state with the most significant relationship to the occurrence and the parties. Section 145 instructs the court to make this

---

[2] Although neither party raises the choice of law issue, the issue is apparent from the briefs, as Defendants generally apply Utah law and Tesoro generally applies Nevada law.

6

determination by looking to the principles stated in § 6 of the Second Restatement. Under § 6, the court should consider the following factors in determining the applicable rule of law: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability and uniformity of result, and (7) ease in the determination and application of the law to be applied.

In considering the factors outlined in § 6, § 145 instructs the court to take the following contacts into account: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. Restatement (Second) of Conflict of Laws § 145(2).

Tesoro appears to base its intentional interference and civil conspiracy claims around Defendants' actions in initiating and prosecuting the Utah case. The first factor in determining which state has the most significant relationship is the location of the injury alleged. As Tesoro is a Nevada corporation, it may have been injured by Defendants' actions in Nevada. However, it is also possible that the alleged disruptions caused by the Utah case may have affected Tesoro's projects and operations in other states. Because the location of the injury is not clear, this factor does not weigh strongly in favor of applying Nevada law.

In terms of the second factor, the conduct causing the alleged injury occurred in Utah. This factor is particularly important where, as here, there is no clearly demonstrable place of injury. Restatement (Second) of Conflict of Laws § 145(2) cmt. e. Thus, this factor weighs substantially in favor of applying Utah law.

Considering the third factor, Tesoro is a Nevada corporation and Defendants are Texas residents. As Tesoro is the only named party residing in Utah or Nevada, this factor tips in favor of

applying Nevada law.

The final factor considers where the relationship between the parties is centered. "When there is a relationship between the plaintiff and the defendant and when the injury was caused by an act done in the course of the relationship, the place where the relationship is centered is another contact to be considered." Restatement (Second) of Conflict of Laws § 145(2) cmt. e. Here, the relationship between Tesoro and Defendants is indirect at best. Henry Johnston is a former employee, officer, and director of Combined Metals, Douglas Johnston was a shareholder of Combined Metals, and Tesoro was a creditor to Combined Metals. Thus, there is no direct relationship between the parties currently before the court. Moreover, the injury here was not caused by any act done in the course of Defendants and Tesoro's weak relationship. Accordingly, this factor does not weigh in favor of applying either Utah or Nevada law.

Balancing these factors, the court finds that Utah has the strongest connection to this case. The conduct causing the alleged injury clearly took place in Utah, and Utah undoubtedly has an interest in preventing abuses of its legal system. In addition, applying Utah law to the conduct occurring in Utah would provide "certainty, predictability, and uniformity of result." In contrast, Nevada's only connection to the case is that Tesoro is a Nevada corporation that may have suffered some injury in Nevada. Thus, although Nevada has a relationship with the occurrence at issue and the parties, it is not the "most significant relationship." Accordingly, the court will apply Utah law to Tesoro's wrongful interference and conspiracy claims.

### 2. Fraud and Misrepresentation

The Restatement (Second) of Conflict of Laws § 148 governs the court's determination of which law to apply to fraud and misrepresentation claims. In relevant part, § 148 provides that a court should apply the law of the state with the most significant relationship to the occurrence and the parties based on the following factors: (1) the place where the plaintiff acted in reliance upon the defendant's representations; (2) the place where the plaintiff received the representations; (3)

8

the place where the defendant made the representations; (4) the domicile, residence, nationality, place of incorporation and place of business of the parties; (5) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time; and (6) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant. Restatement (Second) of Conflict of Laws § 148(2).

Balancing these factors, the court finds that Utah law applies to Tesoro's fraud and misrepresentation claims. Defendants made the alleged misrepresentations in Utah. From the complaint it is not clear how or where Tesoro acted in reliance upon Defendants' representations. It appears that the only connection Nevada has to this case is that, as discussed above, Tesoro is a Nevada corporation and may have suffered injury from the alleged fraud and misrepresentation in Nevada. As noted, Utah clearly has an interest in preventing abuses if its legal system, and considerations of uniformity and consistency weigh in favor of applying Utah law. Accordingly, the court will also apply Utah law to Tesoro's fraud and misrepresentation claims.

**B. Litigation Privilege**

In their motions for summary judgment, Defendants argue the litigation or judicial proceeding privilege bars Tesoro from asserting the claims against them because Tesoro's complaint focuses exclusively on Defendants' conduct in initiating and pursuing the Utah case. As a result, Defendants maintain they are "absolutely immune from liability . . . ." (Defs.' Mot. Summ. J. (#33) at 5.)

In determining which states's privilege law to apply, the court looks to Nevada's choice of law rules. *See SEC v. Elmas Trading Corp*, 683 F. Supp. 743, 749 (D. Nev. 1987) ("[I]f a witness seeks to invoke a state privilege, the federal court must look to the whole law of the state in which the court sits, including the state's conflict of law rule."). As noted above, in tort cases, Nevada generally follows the Second Restatement to determine which state law governs. Under § 163 of the Second Restatement, the law of the state with the most significant relationship, as determined

9

by the analysis set forth in § 145, determines "whether a person is excused from liability [because] his action was . . . privileged by the local law of the state where he acted."  Restatement (Second) of Conflict of Laws § 163 cmt. a.

Balancing the considerations outlined in § 145, the court finds Utah possesses the most significant relationship to the parties, as discussed above, and to the privilege claim in particular. The allegedly privileged conduct, initiating and pursuing a civil action, occurred in Utah.  To encourage openness during the judicial process and ensure consistent results, Utah clearly has an interest in applying the litigation privilege to cases filed in Utah.  Based on these considerations, the court will apply Utah law to the privilege issue in this case.

In Utah, the judicial proceeding privilege immunizes certain statements made during a judicial proceeding from later claims based on those statements.  *Pratt v. Nelson*, 164 P.3d 366, 376 (Utah 2007).  Although primarily raised as a defense in defamation actions, the privilege "extends not only to defamation claims but to 'all claims arising from the same statements.'" *Bennet v. Jones, Waldo, Holbrook & McDonough*, 70 P.3d 17, 34 (Utah 2003) (*quoting Debry v. Godbe*, 992 P.2d 979 (Utah 1999)).  "The privilege is 'intended to promote the integrity of the adjudicatory proceeding and its truth finding processes.'"  *Pratt*, 164 P.3d at 376 (*quoting Debry*, 992 P.2d at 983)).  It does so by encouraging the "free and open expression by all participants . . . that will only occur if they are not inhibited by the risk of subsequent . . . suits."  *Id.* (*quoting Allen v. Ortez*, 802 P.2d 1307, 1311 (Utah 1990)).

Tesoro argues the judicial proceeding privilege extends only to statements made during the course of litigation and not to improper conduct in initiating an action.  Indeed, if all conduct relating to a judicial proceeding was immune from liability, there would be no need for the torts of abuse of process or wrongful use of civil proceedings.  Accordingly, Defendants counter that Tesoro's claims are based on allegations that Defendants made false statements during the Utah case.

With regard to the fraud and misrepresentations claims, the court agrees with Defendants' argument. In the fraud and misrepresentation claims, Tesoro alleges Defendants made knowingly false representations to the court. This is the sole basis identified for the fraud and misrepresentation claims, and Tesoro has failed to produce any evidence indicating otherwise. As these statements were made during a judicial proceeding, the privilege protects Defendants from liability based on the statements. The court will therefore grant summary judgment with regard to the fraud and misrepresentation claims.

However, Tesoro does not base its wrongful interference claim on statements made by Defendants during the course of the Utah case. Instead, Tesoro appears to base its wrongful interference claim on either Defendants' alleged misconduct in interfering with Combined Metals' Mohave Mine or Defendants's actions in initiating the lawsuit to prevent Combined Metals and Tesoro from obtaining financing. Under either scenario, the interference claim is unrelated to any statements made by Defendants' during the course of the Utah proceeding. Accordingly, the judicial proceeding privilege does not protect Defendants from liability for the wrongful interference claim.

The court notes that Tesoro has repeatedly suggested that its claims are essentially claims for abuse of process. For example, Tesoro states, "Although none of the remaining claims in this case carry the title of 'abuse of process,' all of Tesoro's claims are essentially claims based on the tort of abuse of process. Therefore [Defendants'] actions in pursuing the lawsuit and the statements contained in their pleadings are not protected by the litigation privilege." (Pl.'s Opp. Mot. Summ. J. (#53) at 5.)

The court is unwilling to read an abuse of process claim into the complaint where clearly no such claim has been stated. If Tesoro intended to bring an abuse of process claim, it should have sought to amend its complaint. However, in the more than six years since filing the complaint, Tesoro has made no effort to assert such a claim. Given this delay, the interests of justice would

11

not be served by permitting Tesoro to amend its complaint.  Accordingly, the court will not consider an abuse of process claim, and the court will not read an abuse of process claim into Tesoro's allegations.

### C. Wrongful Interference

In Utah, to establish a claim of interference with prospective economic relations, a plaintiff must demonstrate (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff. *Mt. West Surgical Ctr, L.L.C. v. Hosp. Corp.*. 173 P.3d 1276, 1278 (Utah 2008) (citations omitted).  In the complaint, Tesoro alleges (1) it had a prospective contractual relationship with a third party to procure financing for Combined Metals, (2) Defendants knew of this prospective contractual relationship, (3) Defendants acted without privilege of justification, and (4) Defendants' conduct has damaged Tesoro.

In reviewing the interference claim, the court has been unable to determine the factual basis supporting the claim.  A plaintiff's obligation to provide the grounds of his entitlement to relief in the complaint requires more than labels, conclusions, and a formulaic recitation of the elements of the cause of action. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citations omitted).

Here, beyond stating Defendants "acted," Tesoro has failed to allege any specific conduct by Defendants demonstrating how Defendants interfered with Tesoro's economic relations.  Indeed, although the court has construed the complaint liberally in Tesoro's favor, the court has been unable to determine the specific conduct Tesoro relies upon in asserting its interference claim. More importantly, from the allegations in the complaint, Defendants could not have been on notice of the ground upon which the interference claim rests.  This problem is clearly evidenced by both

parties' varying interpretations throughout the course of this litigation of the conduct upon which the interference claim might be based.

Moreover, under any of the factual scenarios possibly supporting the interference claim, Defendants have demonstrated an absence of genuine issues of material fact. To the extent Tesoro bases its claim on Defendants' attorney allegedly contacting the BLM concerning the Mohave Mine, Plaintiffs have failed to cite to any evidence indicating that such contact ever took place.[3] To the extent Tesoro bases its claim on Defendants initiating the Utah action to prevent Tesoro from obtaining financing, Tesoro has failed to cite to any evidence indicating Defendants filed the Utah action with such an intent.[4]  Because no reasonable jury could conclude based on the evidence before the court that Defendants interfered with Tesoro's prospective economic relations, summary judgment is appropriate.

**D.  Conspiracy**

In Utah, a plaintiff alleging a civil conspiracy must demonstrate the following: (1) a combination of two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a

---

[3] A letter written by Tesoro's attorney to the BLM claims that Defendant Douglas Johnston's attorney "contributed to the BLM's Cessation Order . . . ." (Defs.' Mot. Summ. J. (#48), Ex. 7.) However, this statement is unauthenticated, hearsay, and otherwise unsupported by any evidence before the court.

[4] As evidence of Defendants' wrongful intent Tesoro cites the affidavit of Mr. Atkinson discussing alleged conduct by Henry Johnston in 1996. To the extent Tesoro offers this evidence to demonstrate Henry Johnston has a propensity to engage in certain behavior, this evidence is inadmissible character evidence and is irrelevant to the case at hand. To the extent Tesoro offers this evidence to demonstrate Henry Johnston initiated the Utah action to retaliate against Mr. Atkinson, there has been no such allegation, and no evidence in the record supports this conclusion.

Tesoro also cites Douglas Johnston's alleged admission that he lacked personal knowledge of the allegations in the Utah case's verified complaint. However, it is not clear that Douglas Johnston made such an admission. Instead, he indicated that the allegations in his complaint were based "to some extent" upon information provided to him by his son, Henry Johnston. (Pl.'s Mot. Partial Summ. J. (#49), Ex. 2 at 73.) Moreover, as a shareholder in Combined Metals, Douglas Johnston was entitled to investigate the actions of Combined Metals. The fact that he gained the information from his son, who was also a director of Combined Metals, does not preclude him from filing a complaint based on the information obtained.

proximate result thereof. *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 790 (Utah Ct. App. 1987). Tesoro has failed to cite any evidence demonstrating an agreement between Defendants. To the contrary, the evidence indicates that Henry Johnston specifically told Douglas Johnston not to file the Utah complaint. Accordingly, summary judgment is appropriate.

IT IS THEREFORE ORDERED that Defendants' Motions for Summary Judgment (##33, 48) are hereby GRANTED.

IT IS FURTHER ORDERED that Tesoro's Motion for Partial Summary Judgment (#49) is hereby DENIED.

The Clerk shall enter judgment accordingly

IT IS SO ORDERED.

DATED this 20th day of March, 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE